**Tagged Opinion**

ORDERED in the Southern District of Florida on ___Oct 27, 2008___



John K. Olson, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

In re:

Case No. 07-18288-BKC-JKO

**RAMON A. TOLEDO**

Chapter13

Debtor.

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** came before the Court on the United States of America's (the "Movant"

or "US") Motion for Summary Judgment (the "Motion"), seeking a determination that federal tax

liens remain valid, secured claims. The issues invoked relate to the distinction between the legal

effects of a federal tax lien and a Notice of Federal Tax Lien, and the effect of tolling statutes. For

the reasons set forth below, the Motion is granted.

## FACTS

-1-

## 1. Procedural History

On October 3, 2007, Ramon A. Toledo (the "Debtor") filed a voluntary petition for bankruptcy relief under Chapter 13. *See* [DE 1]. On October 31, 2007, the Internal Revenue Service (the "IRS") filed a proof of claim for $468,265.57, citing a basis of taxes. *See* Claims Register. The claim consisted of an unsecured nonpriority claim for $50,000, an unsecured priority claim for $75,000, and a secured claim for $343,265.57.[1] *Id.* On July 18, 2008, the Debtor filed an objection to the IRS' Amended Proofs of Claim. *See* [DE 77]. On August 8, 2008, the US moved for summary judgment as to the objection. *See* [DE 89]. On September 11, 2008, this Court heard oral arguments on the matter and requested the parties file supplemental briefs. On October 7, 2008, the US filed a supplemental brief.[2]

## 2. Facts of the Case[3]

The Debtor neglected to file a federal income tax return for 1990. The following year, Toledo was tardy in filing - he submitted his return on August 23, 1994. The Debtor again failed to file a return for 1992. He submitted his 1993 return tardily, on January 20, 1995. In accordance with

---

[1]On June 23, 2008, the IRS filed an amended proof of claim for a secured claim of $336,027.57, an unsecured priority claim for $25,606.75, and an unsecured general claim for $56,983.32, thus producing an aggregate claim of $418,617.64. On July 30, 2008, the IRS filed an amended proof of claim for a secured claim of $336,027.57, an unsecured priority claim for $25,606.75, and an unsecured general claim for $23,515.81, thus producing an aggregate claim of $385,150.13.

[2]Despite this Court's request, the Debtor never filed a supplemental brief. Nor did the Debtor ever file a response to the Motion. As such, the Debtor's argument has been limited to those observations made when this matter was heard in court.

[3]Although the Debtor never filed a response to the Motion or a supplemental brief, and the only facts this court has to work with are those present in the Motion itself, the facts themselves were not the subject of dispute when this matter was given a hearing in court - the issues here are all of a legal nature.

26 U.S.C. § 6020(b), the IRS determined Toledo's tax liabilities for 1990 and 1992 in wake of his declination to file a return. Based on timely assessments made, the Debtor's tax liability - inclusive of penalties and interest - for these four years, as of the date of his petition for bankruptcy relief, is $245,828.87. This number is arrived at through the aggregation of unpaid balances of $52,114.02 for 1990, $121,000.91 for 1991, $21,160.13 for 1992, and $51,553.81 for 1993.[4]

Following his non-filings and non-payments, pursuant to applicable law, "a lien in favor of the United States upon all property and rights to property, whether real or personal," arose against the Debtor in the amount of those monies owed to the IRS, inclusive of interest and costs. *See* 26 U.S.C. § 6321. Accordingly, on April 25, 1995, the IRS filed a Notice of Federal Tax Lien ("NOFTL") in Broward County, Florida. On February 22, 2006, November 3, 2006 and November 6, 2006, the IRS filed subsequent liens.

The Debtor made an offer in compromise[5] with the IRS, for all four applicable tax years, on November 26, 1997, which remained pending until March 16, 1998, when the IRS rejected Toledo's offer. On September 12, 2000, the Debtor again made an offer in compromise, this time only with respect to his 1992 and 1993 liabilities. On March 11, 2002, the IRS again rejected the offer.

The Debtor filed a voluntary petition for bankruptcy relief under Chapter 13 on December 15, 2003. Thirty-six days later, on January 20, 2004, the case was converted to a Chapter 7

---

[4]The sum of these debts is $245,828.87, as indicated herein. The Motion suggests a cumulative indebtedness as of the petition date to be $238,590.90. Both of these figures are significantly lower than those manifest in the proofs of claim, inasmuch as the proofs filed before this court are inclusive of other alleged delinquent income tax payments.

[5]Offers in compromise are an official form of negotiation between the IRS and a party owing tax debts. Relevantly here, they are officially discussed in the text of 26 U.S.C. § 6331(k)(1).

proceeding, with an order of discharge being entered on August 19, 2004.

On August 4, 2005, the IRS filed a Revocation of Certificate of Release of Federal Tax Lien for the Debtor's 1990, 1991, 1992 and 1993 liabilities, in Broward County, Florida. Subsequently, the IRS filed the three aforementioned subsequent liens.

On March 9, 2007, the US filed Civil Action No. 07-60341-JIC against the Debtor in the Southern District of Florida, seeking to reduce liabilities to judgment, foreclose tax liens and sell property as a means of satisfying such liabilities. Toledo filed an answer on August 10, 2007 before commencing this bankruptcy proceeding on October 3, 2007.

## DISCUSSION

### 1. Legal Standard for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, incorporated into bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper if the pleadings, deposition, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the Court that there are no genuine issues of material fact that should be decided at trial. *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593-94 (11th Cir. 1995); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion and resolve all reasonable

-4-

doubts in that party's favor. See also *Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328,

1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988)(internal citations omitted). A moving party

discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court

that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325.

The party opposing the motion for summary judgment may not simply rest upon mere

allegations or denials of the pleadings; after the moving party has met its burden of coming forward

with proof of the absence of any genuine issue of material fact, the non-moving party must make a

sufficient showing to establish the existence of an essential element to that party's case, and on which

that party will bear the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 324.; *Poole v. Country

Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997). If the record presents factual issues,

the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense

Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[6] By its very terms the standard for summary

judgment provides that the mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

---

[6]Fifth Circuit Decisions entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

(1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Id.* at 248. As there is no genuine issue as to the material facts, this objection is ripe for adjudication as a matter of law.

## 2. Validity of Tax Liens for 1990, 1991, 1992 and 1993

The Debtor contends tax liens to be valid for a period of ten years and, further, submits that in light of more than a decade having lapsed since the creation of these liens, the IRS' proofs of claim should be re-classified as an unsecured general claim. *See* [DE 77]. The IRS, in turn, submits the relevant proofs of claim to be valid as filed.

It must first be understood that a material distinction exists between a tax lien and an NOFTL. While a tax lien is relevant to an individual with delinquent taxes, an NOFTL is chiefly relevant to the other creditors of such an individual. Indeed, NOFTLs are, in many ways, tantamount to the recording requirement of ordinary security interests - while the obligation is always enforceable against the debtor, it is only enforceable against other properly secured creditors if and when notice is timely and sufficiently given. The tax liens in this case are those debts; the NOFTL is the timely and proper notice for purposes of maintaining seniority to other secured creditors.

While the lien originates under the aforementioned provision of 26 U.S.C. § 6321, an NOFTL is subject to Section 6323(a), which provides in relevant part:

The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

26 U.S.C. § 6323. Under sub-section (g) of the same statute, an NOFTL ceases to be valid ten years and 30 days after the date of assessment. *Id.* This cessation of validity, however, only applies to the NOFTL, not the underlying lien. Further, "[i]f an NOFTL is not timely refiled by the collection

-6-

period for the lien has not yet expired, the IRS can issue a 'Certificate of Revocation' of the certificate of release." *In re Cole*, 205 B.R. 668, 673 (Bankr. D.Mass. 1997). The United States Code, though, still tentatively caps the period of permissible collection of a tax debt at ten years from the date of assessment. 26 U.S.C. § 6502.

The same statute, however, provides for certain circumstances of extension beyond the decade time frame. As Judge Boroff observes:

> [T]he collection period will be suspended in a number of circumstances. For example, the limitation period will be suspended while the automatic stay is in effect as a result of the pendency of a bankruptcy case. If such a suspension occurs, the lien is effectively extended by the length of the suspension period. Thus, whether or not an IRS lien has expired cannot be determined solely by examining whether the ten-year period has terminated.

*Cole* at 673 n.10. Further, "The running of the period of limitations provided in section ... 6502 ... shall ... be suspended for the period during which the Secretary is prohibited from making the assessment or from collecting by levy ... and for 60 days thereafter." 26 U.S.C. § 6503(a)(1). The code also provides that no levy may be made during the period in which an offer in compromise is pending and, if it is rejected, for 30 days thereafter. 26 U.S.C. § 6331(k)(1).

Complicating matters significantly, however, these tolling statutes have been the subject of periodic congressional alteration during the relevant time period. According to the Motion, and undisputed by the Debtor, the tolling period on the initial offer in compromise for the 1990, 1991, 1992 and 1993 liabilities was 476 days. *See* [DE89]. The second offer in compromise, which regarded only the latter two years' liabilities, tolled the relevant period for 133 days. *Id.* Accordingly, the offers in compromise tolled the 1990 and 1991 liabilities for some 476 days, and the 1992 and 1993 liabilities for some 609 days. *Id.* Further, the Debtor's initial bankruptcy petition

-7-

had the affect of tolling the period for 433 days. *Id.* Factoring in these extensions, the earliest any lien would have lapsed was April 14, 2007. *Id.* Since the IRS commenced a civil action against the Debtor 35 days prior to this lapse, the liens are valid.

While the liens themselves may have remained valid at all times relevant, the Movant does not dispute that the NOFTLs did lapse prior to the filing of a Revocation of Certificate of Release of Federal Tax Lien. The effect of this lapse is the liens' subordination to any validly recorded security interest arising during the period of lapse - in this case, it appears at least one such interest may exist. However, this lapse in no ways impacts the validity of the underlying liens - it is a lapse that speaks relevantly to other creditors, not to the Debtor. Accordingly, the IRS' tax liens for 1990, 1991, 1992 and 1993 are, as a matter of law, properly secured liens, valid against all parties except those who may present evidence of a properly recorded security interest filed before August 4, 2005.

For the reasons stated above, it is hereby **ORDERED**

1.  The United States' Motion for Summary Judgment [DE 89] is **GRANTED**.

###

Copies to:

Michael A. Frank, Esq.
10 NW LeJeune Road, #620
Miami, FL 33126

Rachael Amy Kamas, Esq.
U.S. Department of Justice
Post Office Box 14198
Ben Franklin Station
Washington, DC 20044

Ms. Kamas is directed to serve on all other interested parties.

-8-